UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO.: 05-020 |
| v. | * | SECTION: "I" |
| KAREN DAWN DROULIA | * | |
| * * * | | |

FACTUAL BASIS

I. **INTRODUCTION**:

Should this case proceed to trial, the government would prove all of the following through admissible and competent evidence, beyond a reasonable doubt establishing that the defendant committed a mis-prison of a felony:

In January 2003, agents of the Drug Enforcement Administration (DEA hereinafter) developed an investigation of defendants **LEMUEL DORTHEY (a/k/a Lembo)** and **TYKESHA GOODEN (a/k/a Kiki)**, based on law enforcement intelligence information, that they and others were involved in the distribution of heroin, a Schedule I drug controlled substance. Based on this law enforcement intelligence information, DEA agents utilized four (4) confidential sources (CS#1, CS#2, CS#3 and CS#4, hereinafter) and two (2) undercover law enforcement officers to make controlled purchases of heroin from members of a conspiracy to possess with the intent to distribute heroin.

DEA agents employed the use of three (3) Title III wire-tap intercepts during the course of the investigation.

The first phase of this investigation, prior to utilizing wire-tap intercepts, involved 13 separate undercover controlled purchases of heroin, using a confidential informant and/or

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

an undercover agent. The second phase of this investigation, utilized three separate court-ordered Title III wire-tap intercepts on three separate cellular telephones utilized by defendants **LEMUEL DORTHEY (a/k/a Lembo)** and **SHAWN HILLIARD**. A final controlled undercover purchase from **LEMUEL DORTHEY (a/k/a Lembo)** and **RODNEY LOVE** was conducted during the course of the wire-tap phase of the investigation.

II.   **THE CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE QUANTITIES OF HEROIN:**

Individual wire-tap intercepts for the cellular telephones utilized by **LEMUEL DORTHEY (a/k/a Lembo)** and **SHAWN HILLIARD** were all lawfully ordered by Federal District Court Judge Martin L.C. Feldman and resulted in capturing co-conspirators' actions constituting a conspiracy to possess with the intent to distribute heroin. The 18 defendants recorded on these wire tap intercepts include:

**LEMUEL DORTHEY (a/k/a Lembo), JONI MINCE, DANA WILLIAMS, RODNEY LOVE, MICHAEL FORMAN, DAHLIA TROUBLEFIELD, SEAN WHALEN, MYETTA HAWKINS (a/k/a Mighty Duck) (a/k/a Mighty Mouse), ANDRE WASHINGTON, KAREN DAWN DROULIA (a/k/a Dawn), KAMRON PORTER (a/k/a K-Ron), SHAWN HILLIARD (a/k/a Shawn) (a/k/a Bug), ROBERT ALLEN (a/k/a Motor Bike Man), KERRIE WILLIAMSON, DAVID TYRONE MADISON (a/k/a Tyrone), CALVIN VIRGIL (a/k/a Cheeky Black), CARNELL VEAL (a/k/a Veal) and GREGORY FRITH.**

Not intercepted on the Title III wire intercepts were three co-defendants, **TYKESHA GOODEN (a/k/a Kiki), CHRISTOPHER MILTON (a/k/a Wick)** and **RONNIE MYLES,** but other evidence, as described in this factual basis, fully detail how these three defendants

were part of the charged conspiracy.

### III. LAW ENFORCEMENT ACTION *SEIZING* HEROIN *DURING* THE TITLE III WIRE-TAP INTERCEPTS:

Below are facts establishing that the defendant **KAREN DAWN DROULIA** had knowledge of the actual commission of felony cognizable by a court of the United States. That felony was a conspiracy to possess with the intent to distribute at least 100 grams but less than one kilogram of heroin. Additionally, the facts below establish that the defendant **KAREN DAWN DROULIA** did conceal this felony, as described below and did not as soon as possible make know this felony to some judge or other person in civil or military authority under the United States.

A. **November 8, 2004 law enforcement seizure:**   At approximately 4:18 p.m., DEA agents received information over a Title III wire intercept on **LEMUEL DORTHEY's (a/k/a Lembo)** cellular telephone. The information received was that defendant **KAREN DAWN DROULIA (a/k/a Dawn)** arranged to meet with **LEMUEL DORTHEY (a/k/a Lembo)** to purchase, "$3.00 worth" of heroin.[1] At the time of this intercepted call, DEA surveillance agents were already conducting a surveillance of **LEMUEL DORTHEY (a/k/a Lembo)**. During the initial intercepted call from **KAREN DAWN DROULIA (a/k/a Dawn)**, **LEMUEL DORTHEY (a/k/a Lembo)** instructed **KAREN DAWN DROULIA (a/k/a Dawn)** to meet him at their "usual spot," the Hyatt Regency Hotel on Poydras Street.  At that time, DEA surveillance agents traveled to that location and observed **KAREN DAWN DROULIA (a/k/a Dawn)** parked in front of the hotel in a blue Volkswagen. At this time, agents initiated a

---

[1] "$3.00 worth" is a quantity of heroin valued at $300, which is 15 individual dosage units.

surveillance of **KAREN DAWN DROULIA (a/k/a Dawn)**. During the surveillance, a marked police vehicle arrived in the area. At that time, **KAREN DAWN DROULIA (a/k/a Dawn)** contacted **LEMUEL DORTHEY (a/k/a Lembo)** and informed him of police presence and informed him that she would be re-locating to the New Orleans Centre. This action of advising **DORTHEY** of police presence and relocating because of this police presence was a concealment of the conspiracy to possess with the intent to distribute at least 100 grams but less than one kilogram and this action allowed the lead defendant to further this conspiracy and avoid police detection. DEA surveillance observed **KAREN DAWN DROULIA (a/k/a Dawn)** depart the New Orleans Centre, and DEA surveillance followed her to the Rite-Aid Pharmacy, located at 4401 St. Charles Avenue. **KAREN DAWN DROULIA (a/k/a Dawn)** parked in the parking lot closest to a Rally's fast food restaurant. Once in the parking lot, **KAREN DAWN DROULIA (a/k/a Dawn)** contacted **LEMUEL DORTHEY (a/k/a Lembo)** on her cell telephone and informed him that she had arrived at the Rite-Aid. **LEMUEL DORTHEY (a/k/a Lembo)** then informed her that he was about to turn into the parking lot. **LEMUEL DORTHEY (a/k/a Lembo)** arrived in the parking lot driving a white, GMC Yukon with a female passenger, later determined to be defendant **MYETTA HAWKINS (a/k/a Mighty Duck (a/k/a Mighty Mouse)**, and parked. At this time, **MYETTA HAWKINS (a/k/a Mighty Duck (a/k/a Mighty Mouse)** exited the white, GMC Yukon and approached **KAREN DAWN DROULIA's (a/k/a Dawn)** vehicle, while **LEMUEL DORTHEY (a/k/a Lembo)** remained in the white, GMC Yukon. After a brief encounter with **KAREN DAWN DROULIA (a/k/a Dawn), MYETTA HAWKINS (a/k/a Mighty Duck (a/k/a Mighty Mouse)** reentered the white, GMC Yukon, and **MYETTA HAWKINS (a/k/a Mighty**

Duck (a/k/a Mighty Mouse) and **LEMUEL DORTHEY (a/k/a Lembo)** departed the area.

Based on the information received on the Title III wire intercept, coupled with the observations of DEA surveillance agents, the agents reasonably believed that a heroin distribution took place from **LEMUEL DORTHEY (a/k/a Lembo)** and **MYETTA HAWKINS (a/k/a Mighty Duck (a/k/a Mighty Mouse)** to **KAREN DAWN DROULIA (a/k/a Dawn)**. Consequently, DEA surveillance agents followed **KAREN DAWN DROULIA (a/k/a Dawn)** from the area, and conducted an investigatory stop at 1327 St. Charles Avenue. **KAREN DAWN DROULIA (a/k/a Dawn)** was found to be in possession of one (1) clear plastic bag containing 15 individually wrapped pieces of aluminum foil containing a powdered substance. Agents seized this packaged heroin.

The seized substance was then submitted to the DEA laboratory for chemical tests, which yielded a positive result for the presence of heroin. This heroin weighed 1.5 grams. This heroin seizure corroborated coded words used by the defendant and captured on the Title III wire intercepts.

**B.    Excerpted conversation on the Title III wire-tap intercepts:**

Below is a short and select excerpt from the Title III wire-tap intercepts that is an example of the coded language and other modes of communication used by the defendant.

**LEMUEL DORTHEY (a/k/a Lembo)** and **KAREN DAWN DROULIA (a/k/a Dawn)**. The following conversation occurred between **LEMUEL DORTHEY (a/k/a Lembo)** and **KAREN DAWN DROULIA (a/k/a Dawn)** on November 17, 2004:

5

L:   Hello.

D:   Hey baby, did you call?

L:   Oh, I wanted to know if you had called me earlier?

D:   Oh no baby I didn't, ah. . .

. . .

D:   Um, Um, I'm on my way in, ah could you go ahead and <u>make it eight dollars today?</u>

L:   Alright, Alright.

The terms used or adopted by **KAREN DAWN DROULIA (a/k/a Dawn)** correspond with quantities of heroin. **DROULIA's** request to **DORTHEY** to "...make it eight dollars..." is a coded reference to $800 of heroin. The code of "eight dollars" is a term used to conceal from any listener that **DORTHEY** was engaged in a conspiracy to possess with the intent to distribute at least 100 grams but less than one kilogram of heroin.

## IV. CONCLUSION:

Should this case proceed to trial, the government would prove all of the forgoing by calling as witnesses the confidential informants (CS#1, CS#2, CS#3 and CS#4) and undercover law enforcement agents, offering pertinent calls from the three (3) Title III wire-tap intercepts, offering to play relevant portions of surveillance video tape recordings documenting overt acts of the conspirators and offering to play body wire tapes and consensually-recorded telephone calls, which recorded the defendants' illegal actions.

The government would also call as witnesses the controlling DEA Special Agents and Task Force Agents and surveillance team members who monitored the defendant and

her concealment of the conspiracy.  Finally, the government would offer the testimony of DEA forensic chemists who would establish the fact that the substances seized and purchased were in fact heroin, a Schedule I drug controlled substance.

_____  7-27-05
BERNARD J. BAGERT, JR.         Date
Attorney for Karen Dawn Droulia

_____
KAREN DAWN DROULIA         Date
Defendant                                   7-27-05

_____  27 July 2005
John Murphy                          Date
Assistant United States Attorney